OPINION OF THE COURT
Albert Tomei, J.
It is alleged that the defendant, acting in concert with others, caused the death of Leroy Nichols in the course of an attempted robbery and the immediate flight therefrom by shooting Mr. Nichols with a handgun. The defendant stands charged *194 with murder in the second degree (felony murder), robbery in the first degree (two counts), attempted robbery in the first degree (two counts), criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.[1]
Initially, in response to an inquiry by the court, the People stated that they were considering whether to charge the defendant with capital murder. Because there appeared to be a reasonable likelihood that the defendant would be charged with murder in the first degree, an attorney from the office of the Capital Defender was assigned to represent the defendant, pursuant to section 35-b of the Judiciary Law. The defendant is also represented by an attorney appointed pursuant to article 18-B of the County Law.
Upon further investigation, on January 12, 1996, the People represented to the court that, barring newly discovered evidence,[2] it was highly unlikely that the defendant would be charged with murder in the first degree. In reliance on the District Attorney’s representation, on January 16, 1996, the Capital Defender’s Office moved to be relieved of representation.
The issue before the court is whether the motion of the Capital Defender to be relieved of representation of the defendant should be granted, where the District Attorney has stated that it is highly unlikely that he will seek the death penalty, but is not yet foreclosed from doing so.

The Appointment of Counsel: Judiciary Law § 35-b

Judiciary Law § 35-b (l),[3] entitled Assignment of counsel and related services in criminal actions in which a death sentence *195 may be imposed, provides, in pertinent part, as follows: "in any criminal action in which a defendant is charged with murder in the second degree as defined in section 125.25 of the penal law and the district attorney confirms upon inquiry of the court that the district attorney is undertaking an investigation to determine whether the defendant can or should be charged with murder in the first degree as defined in section 125.27 of the penal law and the court determines that there is a reasonable likelihood that the defendant will be so charged, if the defendant is or becomes financially unable to obtain adequate representation * * * at any time * * * prior to judgment * * * the defendant shall be entitled to the appointment of counsel * * * in accordance with the provisions of this section.”
The circumstances under which counsel may be relieved of representation once appointed pursuant to section 35-b are governed by Judiciary Law § 35-b (11), which provides: "The provisions of this section [i.e., § 35-b] shall cease to apply on the tenth day, or such later day as the court may determine to be reasonably necessary to provide for successor counsel if prior counsel is to be relieved, following the entry of either a final judgment or order not subject to review by an appellate court, or a prosecutorial determination, which necessarily precludes an imposition of a sentence of death, whereupon the provision of article eighteen-A or article eighteen-B of the county law shall be applicable.”
Therefore, by the plain terms of the statute, it appears that counsel may be relieved only when (1) the defendant has been convicted and his appeals exhausted, or (2) the prosecutor has affirmatively forsaken any attempt to seek the death penalty.[4]

The Practical Consequences of Judiciary Law § 35-b

In practice, the appointment of counsel process may be summarized as follows: once a defendant is charged with murder in the second degree, the court inquires of the District Attorney whether the prosecutor is conducting an investigation to determine whether the defendant can or should be charged with first degree murder; in virtually every case but those *196 where the circumstances obviously indicate that the death penalty would not be appropriate, the District Attorney will likely respond that such an investigation is being conducted; possessing little information about the case at this early stage, and concerned with protecting the defendant’s rights, the court will have little choice but to determine that there is a "reasonable likelihood” that the defendant will be so charged — triggering the appointment of capital counsel to the indigent defendant — even though it should be obvious that the overwhelming number of murder cases will not be tried as death penalty cases.
This result leads to two problems. First, while the need for experienced Capital Defenders should not be questioned in the appropriate case, nevertheless, it is clear that the appointment of capital counsel can create additional, time-consuming litigation that would not have existed and is not necessary in the "ordinary” homicide case.[5] Second, it forces the Capital Defender’s Office to expend scarce resources on many cases that will not only not be tried as death penalty cases, but may not even be indicted as death penalty cases.
The present case exemplifies the problem. Although the defendant was charged by felony complaint with murder in the second degree, the District Attorney responded to an inquiry by the court that an investigation was being undertaken to determine whether first degree murder charges could and should be brought against the defendant. With little knowledge of the facts of the case at this preindictment stage, the court was constrained to conclude that there was a reasonable likelihood that the defendant would be charged with capital murder. Now, it appears that it is most unlikely that the District Attorney will, in fact, seek the death penalty in the defendant’s case, yet the prosecutor refuses to "affirmatively forsake” the death penalty option. Nevertheless, the defendant’s counsel seeks to be relieved of representation, since it is *197 apparent that continued representation by the Capital Defender would be unnecessary and wasteful under the circumstances.

The Application of the Statute to the Instant Case

The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a].) The New York State Senate memorandum in support of bill No. 2649 (i.e., the death penalty statute) states, in pertinent part, that "The Capital Defenders Office will represent indigent defendants in capital cases.” (Mem para [x] [emphasis supplied].) Although it is clear that the Legislature intended the statute to provide particularly qualified representation to defendants charged with capital murder and faced with the unique challenges of a death penalty prosecution, it should be equally apparent that the Legislature did not intend for the statute, in practice, to mandate the appointment of capital counsel in virtually every second degree murder case. As discussed above, the latter result would have the unintended consequence of wasting the resources of the parties as well as the court in a noncapital prosecution for which the representation of the Capital Defender is not required.
Therefore, it is the decision of the court that, under the circumstances present in the defendant’s case — (1) it is highly unlikely that he will, in fact, be prosecuted for capital murder; (2) the defendant is also represented by 18-B counsel; and (3) the Capital Defender is requesting to be relieved — it is appropriate to relieve the. Capital Defender, and reject a literal interpretation of the statute that would not advance the goal of providing necessary representation to defendants that are charged and prosecuted for capital murder. (See, e.g., New York State Bankers Assn. v Albright, 38 NY2d 430, 436-437 [1975] [in interpreting statute, cdurt may look to purpose of the act when plain meaning leads to unreasonable result plainly at variance with policy of the legislation].)

. There are five codefendants: Shawn Adams; Keith Braithwaite; Keith B. Braithwaite; Alton Brown; and Shairon R. Cornelia. The codefendants stand charged with the same crimes, except that Keith Braithwaite is charged with an additional count of murder in the second degree (intentional murder).

. On January 12, 1996, an Assistant District Attorney stated that, at present, it is believed that the defendant did not shoot the victim; however, if evidence were discovered indicating that the defendant was, in fact, the actor who shot the victim, then the District Attorney would consider seeking the death penalty in the defendant’s case. In the indictment, codefendant Keith Braithwaite is alleged to have shot the victim. Because Braithwaite was less than 18 years old at the time of the commission of the crime, he is not eligible for the death penalty. (See, Penal Law § 125.27 [1] [b].)

. In addition, Judiciary Law § 35-b (7) provides for temporary representation of defendants under the circumstances outlined in section 35-b (1). Because counsel was not appointed in anticipation of being replaced by per *195 manent counsel appointed pursuant to section 35-b (1), section 35-b (7) is not applicable to the instant case.

. Presumably, this would include circumstances in which the prosecutor is foreclosed from seeking the death penalty, for example, where the defendant is indicted on charges of murder in the first degree and the prosecutor does not file within 120 days of arraignment the required notice of intent to seek the death penalty. (See, CPL 250.40 [2].)

. For example, the Capital Defender has made novel motions at the preindictment stage for orders to preserve and inspect evidence and reports, and to enter upon and inspect a victim’s residence — in effect, a "civil search warrant.” It should be noted that this decision does not pass or comment upon the propriety of these motions, but merely mentions them to stress the point that capital representation, while appropriate in some circumstances, may unnecessarily delay other prosecutions where such extensive ligation and representation is not required. Indeed, the Capital Defender has stated that, "the Constitution requires a standard of reliability in capital cases that has no parallel in non-capital cases.” (Defense affirmation in support of order to show cause, People v Hale, 95K080947, index No. 41673-95.)